IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Case No.   GLR-10-373 |
| RANDAL McLEAN | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR NEW TRIAL

The Defendant, Randal McLean, through his counsel, Joshua R. Treem, Esquire, Emily L. Levenson, Esquire, and Brown, Goldstein & Levy, L.L.P., hereby files this Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33(a). For the following reasons, Mr. McLean asks that this Court vacate the judgment in his case and grant him a new trial.

### Introduction

Mr. McLean was convicted of one count of Possession with Intent to Distribute Cocaine under 21 U.S.C. § 841(a)(1) on November 7, 2012. He was acquitted of the second count of the indictment, Possession of Ammunition by a Prohibited Person, under 18 U.S.C. § 922(g).

### Argument

Mr. McLean asks that this Court vacate the judgment for these reasons:

1) The prosecutor improperly commented on Mr. McLean's failure to testify or produce evidence in closing argument;

2) A defense witness, Kiara Winder, was not allowed to testify on a relevant matter that was essential to disproving Officer Mays's credibility;

3) The 404(b) evidence introduced against Mr. McLean was improper character evidence;

4) The government failed to prove that the evidence seized from 313 W. 23rd Street was relevant to its case.

1

Because of both the individual effect of each of these errors and their cumulative effect, Mr. McLean asserts that he was denied his right to a fair trial.

1) <u>The prosecutor improperly commented on Mr. McLean's failure to testify or produce evidence in closing argument.</u>

The prosecutor's comment in rebuttal closing argument that Mr. McLean had not put forth evidence of his innocence amounted to both prosecutorial misconduct and a violation of Mr. McLean's Fifth Amendment right to remain silent. The Fifth Amendment prohibits a prosecutor from commenting to a jury in closing argument or at any time during trial on the failure of an accused to testify in his own defense. *See United States v. Jones*, 471 F.3d 535, 542 (4th Cir. 2006). To determine whether a comment by a prosecutor violates this rule, the Fourth Circuit has said that a court should ask, "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" *Id.* In answering this question, the court must evaluate the comment "in the context in which it was made." *Id.* The test for prosecutorial misconduct is similar: the question is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002) (internal citations and quotations omitted).

At Mr. McLean's trial, the prosecutor violated both of these rights when he accused Mr. McLean of failing to present evidence to prove his innocence. The jury heard this comment in the context of the prosecutor's rebuttal closing argument. As the very last thing they heard before beginning deliberations, it left the jurors walking to the jury room with the thought in their mind that Mr. McLean failed to explain his innocence to them. In this context, the jury inevitably and naturally would take the comment as reflecting on Mr. McLean's failure to

testify. Furthermore, in this context, it is clear that the comment infected the trial with unfairness so as to impinge upon Mr. McLean's constitutional rights.

2) <u>A defense witness, Kiara Winder, was not allowed to testify on a relevant matter that was essential to disproving Officer Mays's credibility.</u>

At trial, Kiara Winder was not permitted to testify as to whether she was given Miranda warnings when Officer Mays entered her home at 313 E. 23rd Street. Officer Mays had previously testified that he had given Miranda warnings to Ms. Winder and the occupants of the house upon entering and before conducting the search. Had she been allowed to testify, Ms. Winder would have said that neither Officer Mays nor any other officer read Miranda rights to her when they entered the house. This information was directly relevant to Mr. McLean's defense because it demonstrated that Officer Mays did not follow proper procedure when investigating this case. Fed. R. Evid. 401. The information was also relevant because it went directly to Officer Mays' credibility, an issue fundamental to the trial. *Id.* Had the jury not believed Officer Mays, there would not have been enough evidence to convict Mr. McLean.

While not explicitly recognized by the Federal Rules of Evidence, common law permits a party to impeach a witness by contradiction to show that witness' testimony was false. *Behler v. Hanlon*, 199 F.R.D. 553, 557-58 (D. Md. 2001). This type of impeachment may be done either through the witness' own concession during examination, or through the introduction of extrinsic contradicting evidence to prove non-collateral matters. *Id. See also United States v. Grover*, 85 F.3d 617 (4th Cir. 1996). *But see Jones v. S. Pac. R.R.*, 962 F.2d 447, 450 (5th Cir. 1992) ("Of course, if the opposing party places a matter at issue on direct examination, fairness mandates that the other party can offer contradictory evidence even if the matter is collateral."). This type of impeachment is especially important when dealing with the credibility of a witness whose testimony is crucial to the defendant's conviction. *See generally Gordon v. United States*, 344

U.S. 414, 422-23 (1953) ("We are well aware of the necessity that appellate courts give the trial judge wide latitude in control of cross-examination, especially in dealing with collateral evidence as to character. But this principle cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.") (internal citations omitted).

Here, the testimony of Kiara Winder would have specifically contradicted Officer Mays' testimony regarding how the search of 313 E. 23rd Street was completed. Ms. Winder's testimony therefore directly responded to a door that Officer Mays opened on direct examination. The whole issue of the search of 313 E. 23rd Street was critical to Mr. McLean's defense. Officer Collins testified that proper procedure when executing a search warrant requires a search of the entire premises—which Officer Mays explicitly stated that he did not do. In addition, Officer Mays testified that Ms. Winder was the only link between Mr. McLean and the second floor rear bedroom in which the evidence was discovered. Once Ms. Winder testified that Mr. McLean did not use the second floor rear bedroom, this link was gone. Consequently, Ms. Winder's testimony was relevant, non-collateral, and essential because it related directly to the key issue at the trial—whether Officer Mays could be trusted. This testimony also related directly to Mr. McLean's guilt or innocence—indeed, if the jury did not believe Officer Mays, they would not have convicted him. *See id.* at 421 ("The alleged contradictions to this witness' testimony relate not to collateral matters but to the very incrimination of petitioners. Except the testimony of this witness be believed, this conviction probably could not have been had."). Consequently, the failure to permit Ms. Winder to testify that she was not read her Miranda rights was error justifying a new trial.

3) <u>The 404(b) evidence introduced against Mr. McLean was improper character evidence.</u>

At trial, the government was permitted to introduce evidence of Mr. McLean's prior convictions to establish identity, knowledge and intent. This evidence was improper because it was not relevant to any issue in this case, was not necessary or reliable, and was unduly prejudicial. As the Fourth Circuit has said:

> [T]he more closely the prior act is related to the charged conduct -either in time, pattern, or state of mind- the more probative it is of the defendant's intent or knowledge in relation to the charged conduct. The fact that a defendant may have been involved in drug activity in the past does not in and or itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, or pattern of conduct.

*United States v. Johnson*, 617 F. 3d 286, 297 (4th Cir. 2010) (internal citations omitted). Regarding identity specifically, a leading treatise says:

> [An act is only admissible] to prove identity when the defendant has committed crimes so nearly identical in method as to earmark them as the handiwork of the accused. Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.

1 McCormick On Evid. § 190 (6th ed.). Here, the prior crimes were not sufficiently similar to the charged conduct to prove identity, knowledge or intent.

In each prior bad act, there was evidence of a direct hand-to-hand transaction between Mr. McLean and an undercover police officer. The police seized the drug evidence directly from Mr. McLean's hand and following arrest recovered the marked buy money directly from his person. This direct seizure of the essential evidence in these cases–drugs and money—from Mr. McLean's person is totally distinct from the present case in which the drugs were only recovered from a stash house—and the essential evidence in the case is purely circumstantial.

5

In the first proposed prior act, occurring on February 13, 2004, in the vicinity of the 2100 block of Barclay Street, Mr. McLean encountered an undercover officer on the street and engaged in a direct hand-to-hand transaction, selling him two vials of cocaine. The undercover paid Mr. McLean with marked buy money, recovered at the time of arrest. In the second proposed act, occurring on January 19, 2004, Mr. McLean was acting along with two other individuals in the street sale of heroin in the vicinity of Barclay Street and 20th Street. Mr. McLean again engaged in a direct hand-to-hand transaction with an undercover officer for four gelatin caps of heroin. The buy money was recovered from his person at the time of arrest.

Unlike these prior convictions, the present case involved no direct hand-to-hand transactions with undercover police officers. No drugs were recovered from Mr. McLean's person incident to arrest, and the police did not arrest or identify any of the three males who were also suspected of participating in drug transactions. Consequently, no drugs were recovered in connection with the suspected hand-to-hand transactions. The only drugs recovered in this case were recovered from the inside of the stash house.

Furthermore, as the testimony of Officer Mays and Special Agent Ellington established, there was nothing unique or distinguishing about any of these offenses. They testified that these offenses were like any commonplace, routine drug deal on the streets of Baltimore. None of the deals bore any unique characteristics that could be said to be Mr. McLean's "signature" or "mark." *See* 1 McCormick On Evid. § 190; *compare United States v. Carroll*, 663 F. Supp. 210, 213 (D. Md. 1986) ("Where the scheme used in the prior crime is identical in virtually every respect with that used in the crime charged, and where it was attempted at the same bank, it is probative of the defendant's common plan or scheme, knowledge and identity.").

The prior convictions also occurred too far in the past to be admitted as 404(b) evidence against Mr. McLean. *See United States v. Johnson*, 617 F.3d 286 (4th Cir. 2010) (Rule 404(b) evidence held inadmissible where past act of drug dealing occurred 5 years prior to the charged offenses); *United States v. Hernandez*, 975 F2d 1035, 1040 (4th Cir. 1992) (Rule 404(b) evidence held inadmissible where witness testified that defendant made statements about a recipe for cooking drugs 6 months prior). In this case, the prior acts occurred in 2004, about 6 years prior to the instant offense. The remote nature of the acts should have rendered the evidence inadmissible.

Furthermore, the probative value of the evidence was substantially outweighed by the prejudice of admitting the evidence. Fed. R. Evid. 403. In each of the prior cases, the defendant was arrested in the act of conducting a transaction with an undercover officer. The combination of the seizure of the drug directly from Mr. McLean's hand along with the recovery of the buy money from his person could leave little doubt as to his involvement in the offenses. In the current case however, the evidence was entirely circumstantial and much less strong. While the police suspected that they observed Mr. McLean engage in hand-to-hand drug transactions involving three other males, no one else was apprehended or identified and no drugs were recovered from Mr. McLean when he was arrested. The only dispositive forensic evidence related to identifying who handled the evidence recovered from the stash house shows that a fingerprint from another person was recovered from a firearm found in the stash house. The circumstantial nature of the evidence rendered this a very close case. It was highly prejudicial to allow the government to bolster its case by allowing the jury to hear evidence of other prior narcotics offenses, the evidence of which is substantially stronger than the present offense. Because of the overwhelming nature of the evidence of the prior offenses, the jury may well have concluded that Mr. McLean must be guilty of the present offense simply because of the quantum of

evidence on the prior cases. Even with a limiting instruction, it is hard to believe, that a jury exposed to the cut-and-dry evidence of the prior bad acts, was not overwhelmed by the prior bad acts evidence. *See Johnson*, 617 F.3d at 298 (finding that the District Court erred in admitting Rule 404(b) evidence even with limiting instruction).

Furthermore, Mr. McLean did not "open the door" to admission of evidence of his prior bad acts by arguing that he was not aware of the nature of the substances he is alleged to have possessed with the intent to distribute or that he lacked the intent to distribute or possess with intent to distribute cocaine. Mr. McLean's defense was based entirely on reasonable doubt— simply put, that the Government has not met its burden in this case and the Government arrested and charged the wrong man. In the absence of him opening the door to evidence of knowledge and intent, the evidence of his prior convictions was entirely irrelevant and improper.

4) <u>The Government failed to prove that the evidence seized from 313 E. 23rd Street was relevant to its case.</u>

Mr. McLean asks that this Court vacate the judgment because the government failed to prove that the evidence recovered from 313 E. 23rd Street was relevant to its case. Specifically, the testimony at trial undermined any confidence that the evidence actually belonged to Mr. McLean. Furthermore, the government failed to present any proof that the evidence actually was removed from the second floor rear bedroom. Consequently, this evidence should have been excluded under Federal Rules of Evidence 104, 401, 403, and 404(b), because it was irrelevant, unfairly prejudicial, confuses the issues, misleads the jury, and is cumulative.

This evidence should have been excluded under Federal Rule of Evidence 401 because it was not adequately linked to Mr. McLean at trial, and also because it does not pertain to the crime for which Mr. McLean has been charged, and is thus irrelevant. Fed. R. Evid. 401. The testimony of Mr. Winder established that the second

floor rear bedroom was hers, not Mr. McLean's. This testimony was clearly contrary to what the government expected and needed to link this evidence to Mr. McLean. Without Ms. Winder's testimony, the government had no evidence at all to link Mr. McLean to the evidence. All that the government showed at trial was that it found a bag in a house inhabited by five other people (and significantly, <u>not</u> by Mr. McLean). The government could not show how the evidence got into that room. They could not show who it belonged to. They could not show when it got there, or when it was last accessed. They had no forensics to link the evidence to Mr. McLean or anyone else. There was no testimony of any witness linking it to Mr. McLean. The government was unable to show any connection between the evidence and Mr. McLean at all. Consequently, the evidence should have been excluded as irrelevant.

To the extent that this evidence is relevant, this evidence should be excluded under Federal Rule of Evidence 403 because it is unfairly prejudicial, confuses the issues, misleads the jury, and is cumulative; as well as under Federal Rule of Evidence 404(b) because it is impermissible "other crimes" evidence. Fed. R. Evid. 403; 404(b). The evidence found at 313 E. 23rd Street does not relate to the crime charged, and consequently, it has the tendency to confuse the jury and also has very little probative value. *See United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991) ("Of course, to be relevant the extrinsic act evidence must be sufficiently related to the charged offense.") (internal quotations omitted). Mr. McLean was charged with a specific drug, on a specific date and the evidence is directed at a specific location, which is unconnected to the items seized, except by the inference that if items at 313 E. 23rd Street are

connected to Mr. McLean, the items at 2204 must be too, the very propensity evidence that 404(b) prohibits. This is highly prejudicial evidence that makes it far more likely that the jury will convict the defendant simply by presuming he is guilty despite the absence of my forensic connection between the items seized at 2204 Guilford and Mr. McLean. Furthermore, when viewed alongside the 404(b) evidence of Mr. McLean's prior convictions, Mr. McLean might as well have been convicted before he entered the courtroom. The government had established his intent and wherewithal to commit the charged offense before Officer Mays even testified. Consequently, a new trial is proper both because of the individual errors in this case and also because of their cumulative effect.

### Conclusion

For the foregoing reasons, Mr. McLean respectfully requests that this Court grant his motion for a new trial.

Respectfully submitted,

/s/
JOSHUA R. TREEM (Bar No. 00037)
EMILY L. LEVENSON (Bar No. 28670)
Brown, Goldstein & Levy, L.L.P.
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
(410) 962-1030
jtreem@browngold.com
elevenson@browngold.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of December, 2012, a copy of the foregoing Motion for New Trial was served on AUSA John Purcell, Jr., through the court's CM/ECF system.

/s/
Joshua R. Treem